IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-03784

KRISTEN GUADIANA,

    Plaintiff,

v.

CITY AND COUNTY OF DENVER,

    Defendant.

## COMPLAINT AND JURY DEMAND

Plaintiff, Kristen Guadiana, by and through her attorneys, Sweeney & Bechtold, LLC, for her Complaint states:

### INTRODUCTION

1. This is an employment discrimination suit brought by a former employee of the City and County of Denver, who was discriminated and retaliated against up to and including being terminated in violation of the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. § 12101, *et seq.*

### PARTIES

2. Plaintiff Kristen Guadiana (f/k/a Sandoval) is a resident of the State of Colorado.

3. Defendant City and County of Denver ("the City") is a municipality in Colorado organized under the laws of the State of Colorado.

4. The City's principal office is located at 201 W. Colfax Ave., Dept. 1108, Denver, Colorado 80202.

## JURISDICTION AND VENUE

5. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1343, in that this action arises under federal law, specifically the ADA.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), as the unlawful employment practices alleged herein were committed within this judicial district.

7. At all relevant times, Defendant was covered by the definition of "employer" set forth in 42 U.S.C. § 12111(5)(A).

8. The procedural prerequisites for the filing of this suit have been met. Plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and has received a Notice of Right to Sue letter.

## SPECIFIC ALLEGATIONS

9. The City operates the Denver Department of Human Services ("DDHS").

10. DDHS hired Plaintiff on May 15, 2015 as an Eligibility Technician ("ET") I in the Family and Adult Assistance Division.

11. As an ET I, Plaintiff was responsible for assisting DDHS clients in determining their eligibility for Medicaid assistance.

12. Throughout her employment, Plaintiff reported to Nora Pacheco, Eligibility Supervisor at the Family and Adult Assistance Division of DDHS.

13. Plaintiff was hired with approximately 20 other ET I's, all of whom reported to Ms. Pacheco.

14. The ET I's were required to complete a certain number of applications each day and the accuracy of these applications was also tracked.

15.     Plaintiff is disabled under the ADA in that she has cerebral palsy, which causes weakness and/or paralysis on the left side of her body.

16.     Plaintiff can use her left leg to stand and walk but this leg is more easily fatigued; Plaintiff is unable to use her left hand for certain manual tasks, including typing.

17.     Plaintiff's cerebral palsy significantly impacts one or more major life activities, including but not limited to: walking, lifting, performing manual tasks, and standing, and the operation of a major bodily function, i.e., function of the musculoskeletal system.

18.     Plaintiff came to the City with nine years of related experience at two other counties where she assessed individuals' eligibility for food assistance and Medicaid.

19.     While in new hire training with Defendant, Plaintiff was one of the first employees out of the new hire group to be removed from "supervisor authorization"; this meant that she could independently make eligibility determinations to approve or deny access to benefits.

20.     Within a month or two of starting with the City, Ms. Pacheco and several of Plaintiff's colleagues noted that Plaintiff typed with only one hand and was quite a fast typer regardless.

21.     Plaintiff disclosed to these individuals that she was unable to type with her left hand because of her disability.

22.     Approximately every month or every other month, Plaintiff met one on one with Ms. Pacheco for ten to fifteen minutes to see how Plaintiff was doing and if she needed anything.

23.     Ms. Pacheco had these same regular one-on-one meetings with all of the other ET I's.

24.     Just before the close of each one-on-one meeting, Ms. Pacheco would disclose numbers related to Plaintiff's performance, i.e., completed applications and accuracy; however, Ms. Pacheco never described the origin of these figures.

25.     On November 5, 2015, Ms. Pacheco told Plaintiff that Plaintiff's "numbers are a little low" and that the City would be extending Plaintiff's probation.

26.     Before this meeting, Plaintiff had never been told that she was failing to meet certain metrics or was otherwise not meeting expectations.

27.     Ms. Pacheco asked if Plaintiff had any idea why her numbers were low and if there was anything that she needed to assist her.

28.     Plaintiff responded by reminding Ms. Pacheco that Plaintiff cannot type with her left hand because she had experienced a stroke as a child that had caused cerebral palsy, which impacts the functioning of the left side of her body.

29.     As a result of this disclosure by Plaintiff, Ms. Pacheco contacted Wilma Springer, the City's ADA Coordinator.

30.     Ms. Springer sent a Reasonable Accommodation Questionnaire to Plaintiff's physician on or around November 12, 2015; Plaintiff's physician promptly returned a completed copy of the same.

31.     In or around late December 2015/early January 2016, Ms. Pacheco's supervisor, Gabriel Millán, Operations Manager of the Family and Adult Assistance Division of DDHS, contacted Elizabeth Ortiz who had served as Plaintiff's supervisor when Plaintiff was an employee of Jefferson County.

32.     Among other things, Mr. Millán asked Ms. Ortiz about Plaintiff's job duties, whether she had any "special accommodations," and Plaintiff's reason for leaving her employment.

33.     Defendant claims that Mr. Millán contacted Ms. Ortiz "[i]n order to determine the best way to accommodate [Plaintiff]."

34. Mr. Millán subsequently circulated the feedback that he received from Ms. Ortiz about Plaintiff to Ms. Springer, an Assistant City Attorney, and two employees in Defendant's Office of Human Resources.

35. Plaintiff did not consent to Mr. Millán contacting Ms. Ortiz. In fact, Plaintiff was entirely unaware that Mr. Millán had reached out to Ms. Ortiz until Defendant described the communication in its April 2017 response to Plaintiff's EEOC charge of discrimination.

36. Following the November 2016 check in, Plaintiff began to track how many applications she was completing each day and asked to compare them to Ms. Pacheco's figures, which were always lower than Plaintiff's.

37. Each time Plaintiff made this request, Ms. Pacheco refused, saying that she calculates the numbers "on her own" and does not show them to employees as a matter of course.

38. On January 8, 2016, the City extended Plaintiff's probation again, this time through May 17, 2016.

39. In the memorandum to Defendant's Office of Human Resources requesting this extension of Plaintiff's probationary period, Defendant stated that DDHS would purchase voice activated software for Plaintiff by January 31, 2016 and that Plaintiff would be given one month to set up and become acclimated to the software before Ms. Pacheco could begin tracking and evaluating Plaintiff's productivity.

40. On or around January 12, 2016, Ms. Springer shadowed Plaintiff in order to assess what reasonable accommodations would be useful.

41. Ms. Springer suggested that Plaintiff might benefit from a one-handed keyboard, voice recognition software, and an ergonomic assessment.

42. Ms. Springer also stated that, if these reasonable accommodations proved unhelpful, the City would need to find Plaintiff a different position at DDHS or another agency within the City.

43. On January 25, 2016, Safety Officer Gary Freeman conducted an ergonomic assessment of Plaintiff's workspace.

44. In his report, Mr. Freeman recommended that Defendant provide Plaintiff with a "short" keyboard, which is narrower than a regular keyboard as it does not have a build-in keypad or "special" keys, as well as a 10-key keypad for entering numbers.

45. Plaintiff, Ms. Springer, and other representatives of the City ultimately decided against the voice recognition software.

46. Plaintiff was on approved leave from mid-February until March 14, 2016 for an unrelated medical issue.

47. While Plaintiff was on leave, the "short" keyboard arrived but was not installed.

48. During Plaintiff's leave, Ms. Springer also ended the interactive process via letter on February 25, 2016, despite the fact that Plaintiff had not yet used or even received either keyboard.

49. When Plaintiff returned to work, she had a temporary part-time schedule, i.e., four hours per day for the remaining two weeks of March 2016.

50. Shortly after Plaintiff returned to work in mid-March, the City attempted to install the "short" keyboard but was unable to do so because it was intended for use with a tablet, not a computer.

51.     During Ms. Pacheco's one-on-one meeting with Plaintiff in March, Ms. Pacheco told Plaintiff that she did not meet her goals for February or March, but that Ms. Pacheco could already tell that Plaintiff was "on track" to meet her goals in April.

52.     During this meeting, Plaintiff asked how Ms. Pacheco calculated the numbers for February and March since Plaintiff had only worked 11 days in February and 14 half-time days in March; Ms. Pacheco refused to discuss the matter further.

53.     Upon returning to work in March, Ms. Pacheco assigned Plaintiff to a call center where she provided information to clients regarding their case but did not enter information into the computer system.

54.     Although Ms. Pacheco said that she took these calls "into account" when calculating Plaintiff's performance numbers, Ms. Pacheco never described how she did so.

55.     Plaintiff received a review in March with a rating of "below expectations."

56.     This review was conducted before Plaintiff's approved accommodations were in place.

57.     The "short" keyboard finally arrived and was installed on or around April 12, 2016.

58.     Just nine days later, on April 21, 2016, Defendant terminated Plaintiff allegedly for failing to pass employment probation.

59.     Defendant terminated Plaintiff about three and a half weeks before the end of her probationary period on May 17, 2016.

60.     Plaintiff filed charge of discrimination no. 541-2017-00743 with the EEOC within 300 days of her termination.

61.     The EEOC issued a Notice of Right to Sue on September 28, 2020.

## STATEMENT OF CLAIMS

### FIRST CLAIM FOR RELIEF
(Disability Discrimination in violation of the Americans with Disabilities Act, as amended)

62. The foregoing allegations are realleged and incorporated herein by reference.

63. Plaintiff's cerebral palsy is a physical impairment that substantially limits several major life activities.

64. Plaintiff was able and qualified to perform her essential job duties with or without a reasonable accommodation.

65. It follows that, during her employment with Defendant, Plaintiff was a qualified individual with a disability under the ADA.

66. Defendant discriminated against Plaintiff because of her disability by, among other things: failing to take into account any issues with Plaintiff's performance that were the result of her disability; contacting Plaintiff's former supervisor at a previous employer about the accommodations that Plaintiff received during her employment and the circumstances of her separation from employment; unilaterally ending the interactive process without first assessing the effectiveness of the approved accommodations; terminating Plaintiff without first evaluating whether Plaintiff's purported performance issues improved following the use of her approved accommodations; failing to offer Plaintiff additional reasonable accommodations, including transfer to a vacant position for which she was qualified; and otherwise failing to engage in the interactive process in good faith.

67. As a direct and proximate result of Defendant's actions, Plaintiff has suffered and continues to suffer damages, including lost wages and benefits, diminished reputation and other

pecuniary losses, and emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

## SECOND CLAIM FOR RELIEF
(Retaliation in violation of the ADA, as amended)

68. The foregoing allegations are realleged and incorporated herein by reference.

69. Plaintiff participated in statutorily protected activity by requesting a reasonable accommodation of her disability pursuant to the ADA.

70. Following Plaintiff's requests for reasonable accommodation, Defendant retaliated against her by, among other things: failing to provide Plaintiff with additional details about the source of the numbers related to Plaintiff's performance, i.e., completed applications and accuracy; contacting Plaintiff's former supervisor at a previous employer about the accommodations that Plaintiff received during her employment and the circumstances of her separation from employment; unilaterally ending the interactive process without first assessing the effectiveness of the approved accommodations; terminating Plaintiff without first evaluating whether Plaintiff's purported performance issues improved following the use of her approved accommodations; failing to offer Plaintiff additional reasonable accommodations, including transfer to a vacant position for which she was qualified; and otherwise failing to engage in the interactive process in good faith.

71. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer damages, including lost wages and benefits, diminished reputation and other pecuniary losses, and emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

**DEMAND FOR JUDGMENT**

WHEREFORE, Plaintiff Kristen Guadiana respectfully requests that this Court enter judgment in her favor and against Defendant City and County of Denver and order the following relief as allowed by law:

A. Compensatory damages, including but not limited to those for emotional distress, inconvenience, mental anguish, and loss of enjoyment of life;

B. Back pay and benefits;

C. Reinstatement or front pay and benefits;

D. Injunctive and/or declaratory relief;

E. Attorney fees and costs of the action, including expert witness fees, as appropriate;

F. Pre-judgment and post-judgment interest at the highest lawful rate; and

G. Such further relief as justice allows.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted December 23, 2020.

                    By:    SWEENEY & BECHTOLD, LLC

                            s/Ariel B. DeFazio
                            650 S. Cherry St., Ste. 700
                            Denver, CO 80246
                            Telephone: (303) 865-3733
                            Fax: (303) 865-3738
                            E-mail: abdefazio@sweeneybechtold.com

                            s/Charlotte N. Sweeney
                            Charlotte N. Sweeney
                            650 S. Cherry St., Ste. 700
                            Denver, CO 80246
                            Telephone: (303) 865-3733
                            Fax: (303) 865-3738
                            E-mail: cnsweeney@sweeneybechtold.com

                            ATTORNEYS FOR PLAINTIFF

Plaintiff's Address:
738 Goldenrod Parkway
Brighton, CO 80640

11

**CERTIFICATION OF GOOD STANDING**

I hereby certify that I am a member in good standing of the bar of this Court.

                    By:    SWEENEY & BECHTOLD, LLC

                             s/Ariel B. DeFazio
                             650 S. Cherry St., Ste. 700
                             Denver, CO 80246
                             Telephone: (303) 865-3733
                             Fax: (303) 865-3738
                             E-mail: abdefazio@sweeneybechtold.com

                             s/Charlotte N. Sweeney
                             Charlotte N. Sweeney
                             650 S. Cherry St., Ste. 700
                             Denver, CO 80246
                             Telephone: (303) 865-3733
                             Fax: (303) 865-3738
                             E-mail: cnsweeney@sweeneybechtold.com