IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-03784-STV

KRISTEN GUADIANA,

    Plaintiff,

v.

CITY AND COUNTY OF DENVER,

    Defendant.

_____

### ORDER
_____

Magistrate Judge Scott T. Varholak

    This matter is before the Court on Defendant's Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(1) (the "Motion to Dismiss").  [#22]  The parties have consented to proceed before the undersigned United States Magistrate Judge for all proceedings, including entry of a final judgment.  [#9, 10]  The Court has carefully considered the Motion to Dismiss and related briefing, the entire case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Motion to Dismiss.  For the following reasons, the Motion to Dismiss is **DENIED.**

**I.   BACKGROUND**[1]

Plaintiff has cerebral palsy, which causes weakness or paralysis on the left side of her body. [#17, ¶ 23] Plaintiff was hired by Defendant City and County of Denver (the "City") as an Eligibility Technician ("ET") in the Family and Adult Assistance Division within the Denver Department of Human Services ("DDHS") on May 15, 2015. [*Id.* at ¶ 11] As an ET, Plaintiff was responsible for assisting DDHS clients in determining their eligibility for Medicaid assistance. [*Id.* at ¶ 13] Upon her hire, Plaintiff was eligible for the benefits available to employees of the City, including medical dental, vision, disability, and life insurance, workers' compensation benefits, and the Denver Employee Retirement Plan. [*Id.* at ¶¶ 14, 15] Plaintiff also was required to take three training courses that are required for all new City employees. [*Id.* at ¶ 16] Throughout her employment, the City issued Plaintiff her paychecks and W-2 forms. [*Id.* at ¶¶ 17] As a City employee, Plaintiff was required to comply with City policies and practices and was subject to the City's Career Service Rules, which "govern employment with the [City], including pay, classification, transfers, dispute resolution, promotions, training, and other personnel policies." [*Id.* at ¶¶ 18-19]

Throughout her employment, Plaintiff reported to Nora Pacheco, an Eligibility Supervisor with the DDHS. [*Id.* at ¶ 20] As an ET, Plaintiff was required to complete a certain number of applications each day and the accuracy of the applications also was tracked. [*Id.* at ¶ 22] During new hire training, Plaintiff was one of the first employees to

---

[1] As explained in more detail below, for the purposes of the instant Motion to Dismiss, the Court accepts all allegations in Plaintiff's Amended Complaint as true. *See Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002).

2

be removed from "supervisor authorization," meaning that she could independently make eligibility determinations to approve or deny access to benefits.  [*Id.* at ¶ 27]

As a result of her cerebral palsy, Plaintiff is unable to use her left hand for certain tasks, including typing.  [*Id.* at ¶ 24]  Within a month or two of beginning her employment with the City, Ms. Pacheco and several other colleagues noted that Plaintiff typed with only one hand but was still quite a fast typist.  [*Id.* at ¶ 28]  Plaintiff disclosed to these individuals that she was unable to type with her left hand due to her cerebral palsy.  [*Id.* at ¶ 29]

Approximately every month or every other month, Ms. Pacheco met with Plaintiff and other ETs to discuss their performance and check if there was anything she could do to help.  [*Id.* at ¶¶ 30, 31]  On November 5, 2015, Ms. Pacheco told Plaintiff during one of these meetings that her "numbers [we]re a little low" and informed Plaintiff that the City would be extending her probationary period.  [*Id.* at ¶ 33]  Ms. Pacheco asked Plaintiff if she had any idea why her numbers were low and inquired whether there was anything Plaintiff needed to assist her.  [*Id.* at ¶ 35]  Plaintiff reminded Ms. Pacheco that she could not type with her left hand because she had experienced a stroke as a child that had caused cerebral palsy.  [*Id.* at ¶ 36].

Following this meeting, Ms. Pacheco contacted Wilma Springer, the ADA coordinator at the City's Office of Human Resources.  [*Id.* at ¶ 37]  On November 9, 2015, DDHS sent a formal memorandum to Karen Niparko, the Executive Director of the City's Office of Human Services, requesting a 60-day extension of Plaintiff's probationary period to "allow more time to manage the ADA interactive process."  [*Id.* at ¶ 39]  On or about November 12, 2015, Ms. Springer sent a Reasonable Accommodation Questionnaire to

Plaintiff's physician, and Plaintiff's physician promptly returned the completed form. [*Id.* at ¶ 38] In or around December 2015 or early January 2016, Ms. Pacheco's supervisor, Gabriel Millán, contacted Plaintiff's supervisor at her prior employer, Jefferson County, and, among other things, asked about Plaintiff's job duties in her prior position, whether she had been given any "special accommodations," and the reason for her departure from that employment. [*Id.* at ¶¶ 40, 41] Mr. Millán then circulated the information he received to Ms. Springer, an Assistant City attorney, and two employees in the City's Office of Human Resources. [*Id.* at ¶ 43]

On January 8, 2016, the City requested another extension of Plaintiff's probationary period through May 17, 2016. [*Id.* at ¶ 47] In the memorandum requesting the extension, the City stated that DDHS would purchase voice-activated software for Plaintiff by January 31, 2016, and that Plaintiff would be given one month to set up and become acclimated to the software before Ms. Pacheco could begin tracking and evaluating Plaintiff's productivity. [*Id.* at ¶ 48] On or around January 12, 2016, Ms. Springer shadowed Plaintiff to assess what reasonable accommodations may be useful. [*Id.* at ¶ 49] Ms. Springer suggested that Plaintiff may benefit from a one-handed keyboard, voice recognition software, and an ergonomic assessment.[2] [*Id.* at ¶ 50] Ms. Springer also stated that, if these accommodations proved unhelpful, the City would need to find Plaintiff a different position at DDHS or another agency within the City. [*Id.* at ¶ 51]

On January 25, 2016, a Safety Officer conducted an ergonomic assessment on Plaintiff's workspace and recommended that the City provide Plaintiff with a "short"

---

[2] Plaintiff, Ms. Springer, and other representatives of the City ultimately decided against the voice recognition software. [*Id.* at ¶ 54]

keyboard as well as a 10-key keypad for entering numbers. [*Id.* at ¶¶ 52, 53] While Plaintiff was on leave from mid-February through March 14, 2016 for an unrelated medical issue, the "short" keyboard arrived but was not installed and the 10-key keypad was apparently never ordered. [*Id.* at ¶¶ 55, 56] Through a letter dated February 25, 2016, Ms. Springer ended the interactive process despite the fact that Plaintiff had not yet used or even received the keyboard. [*Id.* at ¶ 57]

In March 2016, Ms. Pacheco provided Plaintiff with a Performance Enhancement Progress report ("PEPR"), which is an annual evaluation provided to City employees by their supervisors pursuant to Rule 13 of the City's Career Service Rules, for the period of May 18, 2015, through December 31, 2015. [*Id.* at ¶¶ 64, 65] Plaintiff's PEPR included a rating of "below expectations" for Plaintiff but did not mention Plaintiff's need for reasonable accommodations. [*Id.* at ¶¶ 66, 67] On April 12, 2016, the "short" keyboard finally arrived and was installed. [*Id.* at ¶ 68] Nine days later, on April 21, 2016, the City terminated Plaintiff for failing to pass employment probation, even though her probation period was not set to expire until May 17, 2016. [*Id.* at ¶¶ 69, 71] The termination letter referenced several of the City's Career Services Rules. [*Id.* at ¶ 70] Prior to her termination, no one at the City discussed the prospect of transferring Plaintiff to another position within DDHS or another City agency or department. [*Id.* at ¶ 72]

Following her termination, Plaintiff filed for unemployment benefits and identified the City as her former employer. [*Id.* at ¶ 73] The Colorado Department of Labor and Employment awarded Plaintiff unemployment benefits, which were paid by the City. [*Id.*] Plaintiff also filed a charge of discrimination against the City with the Equal Employment Opportunity Commission (the "EEOC"), and the City submitted a position statement in

5

response. [*Id.* at ¶ 74] On September 28, 2020, the EEOC issued a Notice of Right to Sue. [*Id.* at ¶ 75]

On December 23, 2020, Plaintiff filed the instant lawsuit against the City. [#1] On March 26, 2021, Plaintiff filed the Amended Complaint and Jury Demand, asserting claims for disability discrimination and retaliation in violation of the Americans with Disabilities Act of 1990, as amended (the "ADA"). [#17] On April 9, 2021, the City filed the Motion to Dismiss. [#22] Plaintiff filed a response in opposition [23], and the City filed a reply [#24].

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) empowers a court to dismiss a complaint for "lack of subject-matter jurisdiction." Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

Rule 12(b)(1) challenges are generally presented in one of two forms: "[t]he moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir.2004) (quoting

*Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir.2003)). When reviewing a facial attack on subject matter jurisdiction, the Court "presume[s] all of the allegations contained in the amended complaint to be true." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002).

## III.   ANALYSIS

In the Motion to Dismiss, the City argues that "Plaintiff's ADA claims against the City should be dismissed, as the City has immunity from suit [pursuant] to the Eleventh Amendment." [#22 at 1] The Eleventh Amendment provides: "The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has recognized, however, that "States' sovereign immunity is not limited to the literal terms of the Eleventh Amendment." *Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 446 (2004). "Although the text of the Amendment refers only to suits against a State by citizens of another State, [the Supreme Court] ha[s] repeatedly held that an unconsenting State also is immune from suits by its own citizens." *Id.* "[O]nce effectively asserted [Eleventh Amendment] immunity constitutes a bar to the exercise of federal subject matter jurisdiction." *Fent v. Okla. Water Res. Bd.,* 235 F.3d 553, 559 (10th Cir. 2000) (emphasis omitted).

"Eleventh Amendment immunity extends to state agencies that act as arms of the state, but it does not extend to counties, cities, or other political subdivisions of the state." *Ambus v. Granite Bd. Of Educ.,* 975 F.2d 1555, 1560 (10th Cir. 1992). "The arm-of-the-state doctrine bestows immunity on entities created by state governments that operate as

alter egos or instrumentalities of the states." *Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 574 (10th Cir. 1996).

Here, the City argues that "[a]s an arm of the state of Colorado, the City, through its agency [DDHS], enjoys Eleventh Amendment Immunity." [#22 at 2] In response, Plaintiff contends that Denver and the DDHS are separate entities and that, while DDHS might be entitled to sovereign immunity, DDHS "is neither the entity against which this suit was filed nor Plaintiff's former employer." [#23 at 5] The Court agrees. Because the City has mounted only a facial attack on the Court's subject matter jurisdiction—*i.e.*, the City has not offered any evidence in support its Motion to Dismiss, the court must accept Plaintiff's allegations as true for the purposes of the instant Motion to Dismiss. *Ruiz*, 299 F.3d at 1180. Accepting the allegations as true, the Court finds that Plaintiff has plausibly alleged that she was an employee of the City and not only an employee of DDHS.

Plaintiff alleges that she was hired by the City, was entitled to the same benefits provided to employees of the City, was required to comply with the City's policies and practices, and was subject to the City's Career Service Rules. [#17 at ¶¶ 11, 14, 18, 19] Moreover, Plaintiff alleges that employees of the City—including employees of the City's Office of Human Resources and the City Attorney—as distinguished from employees of DDHS, were primarily involved in implementing the ADA interactive process and Plaintiff's subsequent termination. [*See, e.g., id.* at ¶¶ 37, 38, 43, 49, 50, 54, 57, 69, 70] Importantly, Plaintiff alleges that Ms. Springer—an Assistant City Attorney—told Plaintiff that one of the reasonable accommodations that would be considered was transfer to "another agency within the City" and Plaintiff contends that the City discriminated and retaliated against her in violation of the ADA by failing to offer Plaintiff such a transfer.

8

[*Id.* at ¶¶ 51, 80, 84]  Plaintiff alleges that her termination letter referenced several of the City's Career Service Rules as justification for her termination.  [*Id.* at ¶ 70]  Following her termination, Plaintiff alleges that she filed a charge of discrimination against the City—not DDHS—and the City responded.  [*Id.* at ¶¶ 74]  The Court finds these allegations sufficient to allege that Plaintiff was an employee of the City as distinguished from DDHS.  Notably, the City admits in its reply in support of the Motion to Dismiss that "*[b]oth* the City and County of Denver *and* [DDHS], as an agency of the City and County of Denver, employed the Plaintiff."  [#24 at 3 (emphasis added)]

Although the City acknowledges that Plaintiff named the City as distinguished from DDHS as the defendant in this action, the City argues that "Colorado District Courts have applied sovereign immunity to bar claims against [DDHS] even when the Defendant is named *solely* as the 'City and County of Denver.'"[3]  [#24 at 2 (emphasis in original)]  None of the cases cited by the City, however, is applicable here.  Although courts in this District have consistently dismissed cases against DDHS on sovereign immunity grounds,[4] the

---

[3] For the first time in its reply in support of the Motion to Dismiss, the City appears to argue that the City is improperly named as a defendant and that, instead, "the proper 'respondent" in this case pursuant to the ADA is [DDHS]." [#24 at 1]  As an initial matter, the City has waived this argument by raising it for the first time in its reply brief. *See Gutierrez v. Cobos*, 841 F.3d 895, 902 (10th Cir. 2016) (finding that "a party waives issues and arguments raised for the first time in a reply brief" (quotation omitted));  *M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 768 n.7 (10th Cir. 2009) ("[T]he general rule in this circuit is that a party waives issues and arguments raised for the first time in a reply brief."). Regardless, as explained above, Plaintiff has plausibly alleged that Plaintiff was an employee of the City, distinct from DDHS, and the Court must accept these allegations as true for the purposes of the instant motion.

[4] *See, e.g., T.D. v. Patton,* 149 F. Supp. 3d 1297, 1308-09 (D. Colo 2016) (finding DDHS an "arm of the state" entitled to Eleventh Amendment immunity); *Jackson v. City and County of Denver,* 628 F. Supp. 2d 1275, 1292 (D. Colo. 2008) ("As a Colorado county health and human services department, DDHS is an arm of the State of Colorado . . . entitled to Eleventh Amendment immunity."); *Freeman v. White,* No. 05-cv-00164-EWN-

Court is unaware of any decision in which the City and County of Denver—as distinguished from DDHS—was dismissed where, as here, the plaintiff alleged that she was an employee of the City, rather than or in addition to DDHS. The City has not directed the Court to any decision in which a court has found that the City and County of Denver— as a separate and suable entity from DDHS—is entitled to sovereign immunity. To the contrary, Tenth Circuit precedent is clear that sovereign immunity "does not extend to counties, cities, or other political subdivisions of the state." *Ambus,* 975 F.2d at 1560.

The cases cited by the City are inapposite and do not support the application of sovereign immunity at this stage of the proceedings. In *Cobb v. City and County of Denver,* pro se plaintiffs sued the City, DDHS, and other defendants pursuant to 42 U.S.C. § 1983. 761 F. Supp. 105, 106 (D. Colo. 1991). Although the court in *Cobb* found that the plaintiffs' claims against DDHS were barred by Eleventh Amendment immunity, the court did not dismiss the plaintiff's claims against the City on the basis of Eleventh Amendment immunity. *Id.* Instead, the court dismissed the claim against the City because the plaintiffs failed to allege that their injuries "were caused by execution of policies or customs of the City." *Id. Cobb* thus does not support dismissal of the City on the basis of sovereign immunity.

In *Bettis v. City and County of Denver,* the plaintiff asserted employment discrimination claims pursuant to Title VII, the ADA and the Age Discrimination in Employment Act against the City. No. 09–cv–02661–PAB–MJW, 2010 WL 1839332 at *1 (D. Colo. Apr. 8, 2010). The City argued that it was not the proper defendant because

---

CBS, 2006 WL 2793139 at *11 (D. Colo. Sept. 28, 2006) (finding that DDHS is an arm of the state entitled to Eleventh Amendment immunity).

the plaintiff's charge of discrimination filed with the EEOC concerned only the actions of DDHS and DDHS "is a separately suable entity."  *Id.* at *3. By contrast, here, Plaintiff's Amended Complaint alleges that employees of the City—as distinguished from DDHS— participated in the ADA interactive process and termination decision and that Plaintiff named the City rather than DDHS as the respondent in her charge of discrimination filed with the EEOC.  Moreover, the court in *Bettis* did not consider whether the City—as a separate suable entity from DDHS—would be entitled to sovereign immunity.  Instead, the court found only that any claim against DDHS would be barred by sovereign immunity. *Id.* at *3-4.  *Bettis* thus does not support application of sovereign immunity here.

In *Jackson v. City and County of Denver,* the pro se plaintiff brought claims for employment discrimination against the City, "acting by and through its agency [DDHS]." 628 F. Supp. 2d 1275 (D. Colo. 2008).  In the course of the litigation, the pro se plaintiff "clarified that th[e] action [wa]s brought solely against DDHS." *Id.* at 1291.  Based upon that clarification, the court in *Jackson* only considered whether DDHS was entitled to Eleventh Amendment immunity and found that it was.  *Id.* at 1292 ("As a Colorado county health and human services department, DDHS is an arm of the State of Colorado.  Thus, DDHS is entitled to Eleventh Amendment immunity.")  In the present case, Plaintiff has intentionally sued the City independent of DDHS and has plausibly alleged that the City— rather than or in addition to DDHS—was her employer.  *Jackson* thus is inapposite and does not support a finding of sovereign immunity.

In sum, the Court finds that Plaintiff has plausibly alleged that she was employed by the City—as distinguished from DDHS—and the City is not entitled to sovereign immunity.

**IV.     CONCLUSION**

For the foregoing reasons, the Motion to Dismiss [#22] is **DENIED.**

DATED:  August 10, 2021                         BY THE COURT:

                                                s/Scott T. Varholak
                                                United States Magistrate Judge

12